# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

ABIGAIL YALCIN

      Plaintiff,

v.

WESTERN COLORADO UNIVERSITY,
VICTORIA LENORE FELLOWS, in her
Official and Individual Capacities; MILES
CARTER VAN HEE, in his Official and Individual
Capacities; and GARY PIERSON, in his Official
and Individual Capacities;

      Defendants.

Case No.

Hon.

---

Michael Nimmo (36947)
Charles Mendez (47467)
WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiffs
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
T: 303.571.5302
F: 303.571.1806
michael@denvertriallawyers.com
charles@denvertriallawyers.com

---

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

The undersigned hereby certifies that there is no other action pending in this Court or any other court between the same parties arising from the same transaction or occurrence, nor has such an action been dismissed after being assigned to a judge.

/s/  *Charles Mendez*
**Charles Mendez**

---

NOW COMES Plaintiff, Abigail Yalcin, by and through her attorneys, Michael Nimmo and Charles Mendez, of WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP, and for her Complaint against the above-named defendants, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant to this lawsuit, Plaintiff Abigail Yalcin (hereinafter "Plaintiff") was a female and resided in Gunnison, Gunnison County, Colorado.

2.     At all times relevant to this lawsuit, Plaintiff was an enrolled student and swim team athlete at Western Colorado University (hereinafter "Western") at the campus located in Gunnison, Gunnison County, Colorado.

3.    At all times relevant to this lawsuit, Defendant Western regularly received Federal monies for purposes of providing services to its students in Colorado.

4.    At all relevant times to this lawsuit, Defendant Western was a public educational institution and body incorporated under the laws of the State of Colorado and a Colorado municipal corporation established pursuant to C.R.S. § 23-56-101, *et. seq.*, with its principal place of business in the County of Gunnison, State of Colorado. Defendant Western receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

5.    At all times relevant to this lawsuit, Defendant Victoria Lenore Fellows (hereinafter "Fellows") is a female and was employed by Defendant Western as a faculty member of the Athletic Department, and thus conducted business in Gunnison, Gunnison County, Colorado.

6.    Defendant Fellows was at all relevant times to this cause of action an employee of Defendant Western, a public college, and acted within the scope of her employment and under color of state law as a state actor.

7.    At all times relevant to this lawsuit, Defendant Miles Carter Van Hee (hereinafter "Van Hee") is a male and was employed by Western as Athletic Director and thus conducted business in Gunnison, Gunnison County, Colorado.

8.     Defendant Van Hee was at all relevant times to this cause of action an employee of Western, a public college, and acted within the scope of his employment and under color of state law as a state actor.

9.     At all times relevant to this lawsuit, Defendant Gary Pierson (hereinafter "Pierson") is a male and was employed by Western as the Dean of Students, and thus conducted business in Gunnison, Gunnison County, Colorado.

10.     Defendant Pierson was at all relevant times to this cause of action an employee of Western, a public college, and acted within the scope of his employment and under color of state law as a state actor.

11.     This case arises under the laws of the United States, specifically, Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681, *et seq*, and 42 U.S.C. § 1983.

12.     The amount of controversy exceeds the sum of $75,000.00 dollars, exclusive of costs, interests, and attorneys' fees, and this Court has subject matter jurisdiction.

13.     This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and/or has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Gunnison, Colorado.

## FACTUAL ALLEGATIONS

15.     At all material times, Defendant Western was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

16.     At all times between August 2022 and December 2022, as an educational institution in receipt of federal assistance, Defendant Western and its employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*

17.     At all times between August 2022 and December 2022, Defendant Fellows was required to adhere to 42 U.S.C. § 1983.

18.     At all times between August 2022 and December 2022, Defendant Van Hee was required to adhere to 42 U.S.C. § 1983.

19.     At all times between August 2022 and December 2022, Defendant Pierson was required to adhere to 42 U.S.C. § 1983.

20.     At all times between August 2022 and December 2022, Plaintiff was an enrolled student and swim team athlete at Defendant Western.

21.     At all times between August 2022 and December 2022, a student athlete named Tayla Liddle was enrolled at Defendant Western and was Plaintiff's senior teammate on Defendant Western's swim team.

22.     Beginning in August 2022 of the fall semester, and continuing throughout September and October 2022, Ms. Liddle took an interest in Plaintiff, and they quickly became close friends.

23.     Throughout the months of September and October 2022, as Plaintiff and Ms. Liddle became closer, Plaintiff noticed a change in Ms. Liddle's behavior. Specifically, Ms. Liddle became possessive over Plaintiff, revealing obsessive behaviors and even stalking tendencies toward Plaintiff.

24.     Throughout the months of September and October 2022, Plaintiff experienced various incidents of harassment and discriminatory conduct Ms. Liddle. At different times, Ms. Liddle repeatedly and excessively called and texted Plaintiff, begging to meet with her.  If Plaintiff refused, Ms. Liddle would spiral into emotional fits.  Ms. Liddle  would become upset and make Plaintiff feel guilty for having other friends and acquaintances.  The constant harassment by Ms. Liddle wore Plaintiff's mental and emotional health down, causing her to become withdrawn and isolated.

25.     As the harassment and stalking behaviors escalated, Ms. Liddle told Plaintiff that she wanted to become more than just friends. Plaintiff Ms. Liddle's romantic advancements, expressing that she was not interested in a romantic

relationship with Ms. Liddle, that she was heterosexual, and that she preferred to set some boundaries between them. In response, Ms. Liddle told Plaintiff that she did not care for boundaries and began acting inappropriately towards Plaintiff, pressuring Plaintiff to kiss and engage in sexual conduct with her.

26.     Toward the middle of October 2022, Ms. Liddle began to periodically spend the night over at Plaintiff's dorm room, often because Ms. Liddle would stay at Plaintiff's dorm room until late at night and then complain that she was too intoxicated to return home.  Ms. Liddle exhibited emotional meltdowns whenever Plaintiff refused to allow her to spend the night and sleep in Plaintiff's bed.

27.     Eventually, the ongoing harassment progressed to sexual misconduct and assault.

28.     On or between October 20, 2022, and/or October 27, 2022, while inside her dorm room at Defendant Western, Plaintiff was sexually assaulted by Ms. Liddle. While Plaintiff and Ms. Liddle were lying in Plaintiff's bed, Ms. Liddle embraced Plaintiff, positioned her body directly behind hers, and hugged Plaintiff. Ms. Liddle then placed her hand on Plaintiff's stomach, slid her hand down to Plaintiff's groin, and fondled Plaintiff's vagina, all without Plaintiff's consent.

29.     A few days after the sexual assault, on or between October 23, 2022, and/or October 29, 2022, Ms. Liddle arranged to meet Plaintiff at a social gathering at Defendant Western's residence hall, under the guise of meeting with friends. Ms.

Liddle then lured Plaintiff into a dark room, where upon entering Ms. Liddle grabbed Plaintiff and began to forcibly kiss her without her consent. After a brief struggle by Plaintiff to exit the room, Ms. Liddle regained her grip and pulled Plaintiff back in. When Plaintiff resisted, Ms. Liddle became upset and began interrogating Plaintiff as to why she was rejecting her. Trapped and afraid, Plaintiff felt she had no other option but to kiss Ms. Liddle. After the kiss, Plaintiff told Ms. Liddle they could no longer be friends and immediately exited the room in tears.

30.    A few days after the second sexual assault, Plaintiff reported Ms. Liddle's ongoing discriminatory sexual harassment and misconduct to Victoria Lenore Fellows, Defendant Western's Head Swim Team Coach. Plaintiff informed Defendant Fellows that Ms. Liddle was making her uncomfortable, and that she did not want to be assigned to any van rides or hotel rooms with Ms. Liddle during team activities going forward.

31.    Defendant Fellows defended Ms. Liddle, assured Plaintiff that Ms. Liddle was not intending to make her feel uncomfortable, and simply told Plaintiff that she needed to set better boundaries with Ms. Liddle.

32.    Plaintiff felt her complaints had been disregarded, as she had not been provided the necessary support and resources to address the sexual discrimination, harassment, and abuse.

33.     After her meeting with Defendant Fellows, Plaintiff confided with some of her senior teammates on Defendant Western's swim team about her experiences with Ms. Liddle, including the sexual discrimination, harassment, and abuse.

34.     Troublingly, Plaintiff learned from her swim teammates that Ms. Liddle's sexual misconduct was a pattern, that Ms. Liddle had sexually harassed and abused other student athletes on the swim team in prior semesters, and that Ms. Liddle's sexual misconduct against other students on the swim team had been reported to Coach Fellows on numerous occasions.

35.     This information encouraged Plaintiff to speak with Coach Fellows a second time, so she could disclose the full extent of Ms. Liddle's sexual harassment and misconduct.

36.     On or about October 31, 2022, or the first week of November 2022, Plaintiff approached Coach Fellows for a second meeting.  During this second meeting, Plaintiff reported that Ms. Liddle had pressured her to engage in sexual conduct, forcibly kissed Plaintiff without her consent, and that Ms. Liddle had inappropriately touched and groped her vagina without her consent while Ms. Liddle was staying the night in Plaintiff's dorm room.

37.     Upon information and belief, Defendant Fellows notified the Athletic director, Defendant Miles Carter Van Hee, and the Dean of Students, Defendant Gary

9

Pierson, about Ms. Liddle's sexual harassment, misconduct, and offensive behavior towards Plaintiff.

38.    However, this was not the first time that Defendants had actual knowledge of Ms. Liddle's sexual discrimination, harassment, and abuse toward student athletes on Defendant Western's swim team.

39.    Long before Plaintiff met Ms. Liddle and experienced sexual discrimination, harassment, and assault, Defendants had actual knowledge that Ms. Liddle had sexually harassed and assaulted other student athletes on the swim team.

40.    In fact, after Plaintiff notified Defendant Fellows of Ms. Liddle's misconduct and sexual and discriminatory harassment, Defendant Fellows first accused Plaintiff of putting herself in that position and then expressed frustration at Defendant Western, stating, "I cannot keep having my athletes being sexually assaulted."

41.    Upon information and belief, Ms. Fellows was referring to events that occurred during the previous year.

42.    Specifically, during the fall semester of 2021, Defendant Fellows received numerous reports regarding Ms. Liddle's concerning behaviors, including stalking, harassment, and inappropriate sexual conduct against female student athletes on Defendant Western's swim team. Student athletes reported that Ms. Liddle would drink excessively until blacking-out, that she would visit teammates at

Defendant Western's residence hall and stay the night by refusing to leave, that she would text teammates incessantly when excluded from group gatherings, and that she would stalk student athletes around campus and their residences.

43.    In the fall semester of 2021, a student athlete on Defendant Western's swim team specifically reported to Coach Fellows and Defendant Western's Title IX coordinator that Ms. Liddle had engaged in sexual discrimination, harassment, and stalking.

44.    In addition, the following semester, in or around January or February 2022, another student at Defendant Western reported to Defendant Fellows, Defendant Van Hee, Defendant Pierson, Defendant Western's Title IX coordinator, and Liam Acosta, the Dive Team Coach at Defendant Western, that Ms. Liddle had sexually assaulted her by groping her genitals, and had continually been stalking and harassing her.

45.    Rather than appropriately addressing the situation with Ms. Liddle, Defendant Western was deliberately indifferent to the complaints made by numerous students and did not take appropriate corrective action.

46.    Despite numerous reports of Ms. Liddle's inappropriate conduct, and sexual and discriminatory harassment, Defendant Western did not initiate an investigation or take corrective action to prevent Ms. Liddle from harassing and assaulting other students.

47.    Instead, Defendant Western failed to provide adequate accommodations to ensure the safety of the student athletes on its swim team, and even took measures to keep the misconduct confidential so Ms. Liddle and Defendants would be protected.

48.    In August 2022, prior to Plaintiff joining Defendant Western's swim team, Defendant Fellows instructed the returning swim team class at Defendant Western not to discuss any of the prior school year's events involving Ms. Liddle's misconduct and sexual and discriminatory harassment with the incoming freshman class. The student athletes were forced to sign a code of conduct agreement that prohibited discussing or gossiping about the events involving Ms. Liddle, among other prohibited conduct. Defendant Fellows further told the team that discussing last school year's events regarding Ms. Liddle would be considered gossip in violation of the agreement, which subjected students to disciplinary consequences, including team expulsion.

49.    Moreover, upon information and belief, in violation of school policy and procedure, during swim team orientation for the fall semester of 2022, Defendant Fellows did not discuss sexual assaults, Title IX, or reporting misconduct with the incoming freshman class.

50.    Upon information and belief, between the months of August 2022 and September 2022, Defendant Fellows and student athletes on the swim team noticed that Ms. Liddle and Plaintiff were developing a close friendship.

51.    However, student athletes familiar with Ms. Liddle's prior incidents of sexual and discriminatory harassment and assault did not warn Plaintiff about Ms. Liddle because they feared it would be in violation of the code of conduct agreement that could result in their expulsion.

52.    Upon information and belief, Defendant Fellows, as an employee and head coach of the swim team at Defendant Western, could have appropriately addressed the situation and taken steps to prevent further inappropriate behavior, sexual and discriminatory harassment, and mistreatment by Ms. Liddle against student athletes at Western, including Plaintiff.

53.    By contrast, Defendant Fellow's deliberate indifference and affirmative actions to conceal and protect Ms. Liddle's prior sexual misconduct and sexual and discriminatory harassment subjected Plaintiff to sexual harassment and misconduct.

54.    Following Plaintiff's reports of Ms. Liddle's inappropriate conduct and sexual and discriminatory harassment, Defendant Western still did not initiate an investigation.

55.    Following Plaintiff's reports of Ms. Liddle's inappropriate conduct and sexual and discriminatory harassment to Defendant Fellows, and other

administration at Defendant Western, Ms. Liddle's sexual and discriminatory harassment and misconduct continued.

56.    Throughout the month of November 2022, at Defendant Western, Ms. Liddle continued to harass and stalk Plaintiff. On numerous occasions, Ms. Liddle contacted Plaintiff via text and social media after Plaintiff specifically asked Ms. Liddle to stop contacting her, followed Plaintiff around campus, and waited outside Plaintiff's dormitory demanding to speak with her, causing Plaintiff anguish and distress.

57.    Because the sexual and discriminatory harassment and misconduct continued, on or about November 28, 2022, a year after Defendant Western initially received notice of Ms. Liddle's inappropriate behavior, and sexual and discriminatory harassment, Defendant Western initiated a Title IX investigation.

58.    Following Plaintiff's reports to Defendant Fellows regarding Ms. Liddle's misconduct and sexual and discriminatory harassment, Plaintiff began to experience hostilities and retaliation by students on the swim team as well as staff in Defendant Western's athletic department. At swim practice, Plaintiff was accused of being a liar, told her sexual assault was made up, and that Ms. Liddle was the victim. Additionally, upon learning that Plaintiff was not willing to swim next to Ms. Liddle, the Athletic Director, Defendant Van Hee, informed Defendant Fellows that Plaintiff should be dismissed from the team, as she was affecting the team dynamic.

59.    At all relevant times, Defendant Fellows was a person with official capacity to take corrective action to remedy the situation.

60.    At all relevant times, Defendant Van Hee was a person with official capacity to take corrective action to remedy the situation.

61.    At all relevant times, Defendant Pierson was a person with official capacity to take corrective action to remedy the situation.

62.    Instead, Defendants were deliberately indifferent to Ms. Liddle's misconduct and sexual and discriminatory harassment and the hostilities against Plaintiff by the athletic department staff and other students on the swim team, and they failed to take corrective action to prevent further harm to Plaintiff.

63.    Throughout November 2022, after Plaintiff had reported the sexual harassment and assault, Plaintiff continued to be subjected to further harassment and abuse by Ms. Liddle during swim training sessions. Plaintiff also continued to be subjected to hostilities and retaliation by other members of the swim team and Defendant Western's staff.

64.    Following Thanksgiving break, in December 2022, after no appropriate action was taken by Defendant Western in addressing or preventing further harm or harassment by Ms. Liddle, her peers, and/or Defendant Western's athletic department staff, Plaintiff resigned from the swim team and disenrolled from the University.

65.     As a result of Ms. Liddle's misconduct, and Defendants' failures to remedy her misconduct, Plaintiff was deprived of the equal educational benefits and opportunities available to her peers at Defendant Western.

### COUNT I – VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seq.* (DEFENDANT WESTERN)

66.     Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

67.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

> *"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

68.     Title IX is implemented through the Code of Federal Regulations 34 C.F.R. Part 106.8(b) provides:

> *"... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."*

69.     Defendant Western receives federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1981 *et seq.*

70.     Title IX protects third parties from sexual harassment and violence in a school's education programs and activities. Under Title IX, Sexual harassment

includes any type of unwelcome conduct of a sexual nature, such as sexual advances, request for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

71.    Defendant Western's policy states that "…all forms of sex discrimination and sex-based harassment are prohibited and will not be tolerated." Sex discrimination is defined as: "[s]ex based harassment …and means sexual harassment and other harassment on the basis of sex, including on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity."

72.    Defendant Western's Title IX Sexual Misconduct Procedure also prohibits other types of sex-based harassment, including *quid pro quo* harassment, hostile environment harassment, sexual assault, dating violence, domestic violence, and stalking.

73.    Plaintiff is considered "persons" within the meaning of 20 U.S.C. § 1681(a).

74.    Ms. Liddle's repeated sexual contact and touching, pressure to engage in sexual contact, fondling of genitalia, unwarranted and unwanted attention, harassing conduct, stalking and other mistreatment against Plaintiff constitutes discriminatory harassment and sexual misconduct within the meaning of Title IX.

75.    Defendant Western's deliberate indifference and failure to respond to being on actual notice of Ms. Liddle's offensive conduct is a violation of Defendant Western's policy on sex based harassment.

76.    Defendant Western failed to comply with its own policy and procedures related to sex based harassment, which was a direct and proximate cause of Plaintiff's loss of educational opportunities, injuries, and damages.

77.    Ms. Liddle's sex-based harassment and sexual misconduct was severe, pervasive, and objectively offensive and effectively barred Plaintiff's access to educational opportunities and benefits at Defendant Western.

78.    The physical, verbal, and behavioral misconduct by Ms. Liddle was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiff's work or academic performance or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

79.    The environment created from the conduct of Ms. Liddle was hostile based on the circumstances, including, but not limited to, the frequency of the conduct, the nature of and severity of the conduct, the relationship between the parties, the location and the context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

80.     Defendant Western's employee, Defendant Fellows, was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct by Ms. Liddle since November 2021.

81.     Defendant Western's employee, Defendant Van Hee, was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct by Ms. Liddle since February 2022.

82.     Defendant Western's employee, Defendant Pierson, was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct by Ms. Liddle since February 2022.

83.     Defendant Western's Dive Team Coach, Liam Acosta, was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct by Ms. Liddle since February 2022.

84.     Defendant Western's Title IX office coordinator was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct by Ms. Liddle since November 2021.

85.     At all times relevant to this action, Defendants Fellows, Van Hee, and Pierson were officials of Defendant Western with the authority to take corrective action or preventative measures to end and/or remedy the discriminatory harassment and sexual misconduct.

86.     Defendant Western's officials had actual knowledge of Ms. Liddle's inappropriate behavior and discriminatory harassment for a significant period of time before the harm that Plaintiff experienced and during the harm that Plaintiff was experiencing, yet no official took any steps towards any corrective action or made any effort to protect students from the harm.  To the contrary, they took active steps to conceal the abuse and protect the perpetrator.

87.     Pursuant to Title IX, Defendant Western and its officials are required to investigate all allegations of sexual and discriminatory harassment upon receiving a report.

88.     Defendant Western is subject to liability because despite actual knowledge of Ms. Liddle's discriminatory harassment and sexual misconduct, it was deliberately indifferent and took no action to prevent or remedy continued discrimination after receiving credible and repeated reports of Ms. Liddle's inappropriate behavior. The lack of adequate response by Defendant Western was clearly unreasonable in light of the known circumstances.

89.    Defendant Western acted with deliberate indifference, and in a clearly unreasonable manner by failing to respond to allegations of discriminatory harassment and sexual misconduct so as to protect Plaintiff and others from such abuse.

90.    As a result of Defendant Western's deliberate indifference to actual knowledge of Ms. Liddle's discriminatory harassment and sexual misconduct, Plaintiff was subject to further harassment and harm by Ms. Liddle and Defendant Western's staff.

91.    Additionally, Defendant Western failed to adequately supervise and train Defendant Fellows, Defendant Van Hee, and Defendant Pierson with regard to assisting, accommodating, and protecting students from risk of harm or a hostile environment as to Title IX requirements and Defendant Western's polices.

92.    Defendant Western's failure to formally investigate and take corrective actions to repeated complaints of Ms. Liddle's discriminatory harassment and sexual misconduct effectively denied Plaintiff the educational opportunities and benefits at Western Colorado University.

93.    As a result of the foregoing, Plaintiff has suffered extensive damages, has lost educational opportunities, has been unable to continue her course of study and participate in a swim athletics program, has missed opportunities for classes, and was deprived of equal access to education.

94.    As a direct result of the foregoing, Plaintiff has suffered, and will continue to suffer, both economic and noneconomic damages, including, but not limited to, the following:

    a.  Physical pain and suffering;

    b.  Mental anguish;

    c.  Fright and shock;

    d.  Denial of social pleasure and enjoyments;

    e.  Embarrassment, humiliation, and mortification;

    f.  Reasonable expenses of necessary medical care, treatment, and services;

    g.  Loss of earning capacity;

    h.  Lost wages;

    i.  Loss of educational opportunities;

    j.  Loss of school funding and scholarships; and

    k.  Any and all injuries or damages that are learned though the course of discovery

**COUNT II –VIOLATION OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 (ALL DEFENDANTS)**

95.    Plaintiff reincorporates and realleges each and every preceding paragraph as if fully set forth herein.

96.      Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants owed Plaintiff certain duties to personal security and bodily integrity and Equal Protection of Laws so as not to violate the constitutional rights of students, and Plaintiff in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent, or otherwise protect students such as Plaintiff in the event that such violations may occur.

97.      Defendants are liable pursuant to 42 U.S.C § 1983, in that their policies, procedures, regulations, and customs, or that their failure to enact policies, procedures, regulations, and customs, caused and were the driving force behind the violation of Plaintiff's constitutional rights as alleged throughout this Complaint.

98.      Defendants were at all times relevant to this cause of action employees and/or administrators of Defendant Western, acting as employees and/or administrators of Defendant Western, and acting within the scope of their employment and under the color of state law.

99.      Defendants at all times relevant to this cause of action held a supervisory and administrative role and had decision-making authority at Defendant Western to enact policies, procedures, regulations, or customs regarding, but not limited to, the endangerment and abuse of students, and had final decision-making authority on matters that included, but were not limited to, investigating and

implementing corrective measures to ensure the safety of Defendant Western's student athletes from sexual harassment and misconduct.

100.    Defendants at all times relevant to this cause of action had actual knowledge of Ms. Liddle's discriminatory sexual harassment and misconduct toward female student athletes, including Plaintiff, on Defendant Western's swim team.

101.    With such knowledge, Defendants condoned, encouraged, or otherwise knowingly acquiesced such conduct, which created substantial risks to Plaintiff that resulted in, or was the driving force behind, the constitutional violations as alleged herein.

102.    With such knowledge, Defendants condoned, encouraged, or otherwise knowingly acquiesced such conduct and thus acted with deliberate indifference to the substantial risks that Plaintiff would be sexually harassed and abused that would result in violation of Plaintiff's constitutional rights as set forth throughout this Complaint.

103.    Defendants were deliberately indifferent to Plaintiff's constitutional and other rights by failing to promulgate a policy and failing to properly supervise and/or take corrective measures against Ms. Liddle to prevent the unconstitutional, unlawful, and tortious mistreatment of the students, including Plaintiff, as alleged throughout this Complaint.

104.   Defendants were deliberately indifferent to Plaintiff's constitutional and other rights by failing to supervise or otherwise take action to prevent the constitutional violations as alleged throughout this Complaint when Defendants had actual knowledge that Ms. Liddle did and would engage in conduct that created the substantial risks that Plaintiff would be sexually harassed and abused that would result in violation of Plaintiff's constitutional rights as set forth throughout this Complaint.

105.   Defendants allowed Plaintiff to be subjected to sexual harassment and unwanted sexual contact by Ms. Liddle that was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

106.   Defendants, through their policies, procedures, regulations, or customs, or lack thereof, breached their duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward Plaintiff specifically, in the following ways, including, but not limited to:

   a. Failing to enact or provide training on proper policies regarding the recognition of the risks that sexual harassment and physical sexual abuse will occur;

   b. Failing to adequately monitor the conduct and behavior of its student athletes, and specifically Ms. Liddle, relative to the propensity to engage in the sexual harassment and physical sexual abuse of other student athletes, despite written policies against such abuse;

   c. Failing to sufficiently take action to prevent the occurrence

of sexual harassment and physical sexual abuse of Plaintiff led to the formation of a custom that such harassment and abuse was encouraged and tolerated;

d.  Failing to have proper policies, procedures, and training to address the danger of sexual harassment and physical sexual abuse against student athletes, including Plaintiff;

e.  Failing to properly supervise, discipline, or otherwise take corrective actions against student athletes, including Ms. Liddle, who are known to engage in improper sexual harassment and sexual abuse;

f.  Failing to train and/or provide orientation to student athletes to prevent violation of students' Constitutional rights;

g.  Sanctioning sexual harassment and physical sexual abuse by failing to adequately discipline or otherwise take corrective actions against student athletes who are known to have violated the Constitutional right of students on prior occasions, including, but not limited to, Ms. Liddle ;

h.  Having a custom, policy, or practice of tolerating the violation of constitutional rights by student athletes on the school swim team;

i.  Ratifying the violation of constitutional rights by student athletes on the school swim team;

j.  Other acts and omissions which may be learned through the course of discovery.

107.   The failures and/or actions set forth above to take action to prevent the sexual harassment and physical sexual abuse by Ms. Liddle of Plaintiff were a common pattern and practice among Defendants of deliberate indifference such that

it constituted a policy or custom that was followed and enforced by supervisors and administrators, including, but not limited to, Defendants.

108.    The above actions, failures, and/or inactions constituted deliberate indifference to the danger of Plaintiff's health, safety, and violation of her constitutional rights, including, but not limited to, those alleged in this Complaint.

109.    The actions and/or deliberate indifference of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff. Moreover, Defendants' conduct violated clearly established constitutional rights of which reasonable persons in their positions would have known. As a result of such intentional conduct, Defendants are not entitled to qualified immunity.

110.    As a direct result of the foregoing, Plaintiff has suffered, and will continue to suffer, both economic and noneconomic damages, including, but not limited to, the following:

     a.  Physical pain and suffering;

     b.  Mental anguish;

     c.  Fright and shock;

     d.  Denial of social pleasure and enjoyments;

     e.  Embarrassment, humiliation, and mortification;

f.  Reasonable expenses of necessary medical care, treatment, and services;

g.  Loss of earning capacity;

h.  Lost wages;

i.  Loss of educational opportunities;

j.  Loss of school funding and scholarships; and

k.  Any and all injuries or damages that are learned though the course of discovery.

111.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

112.  The actions and/or deliberate indifference of Defendants, as described above, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

## COUNT III– HOSTILE ENVIRONMENT IN VIOLATION OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 (ALL DEFENDANTS)

113.  Plaintiffs reincorporate and reallege each and every preceding paragraph as if fully set forth herein.

114.  Under the Fourteenth Amendment, Plaintiff had the right as a public university student to personal security and bodily integrity and Equal Protection of Laws.

115.  Ms. Liddle subjected Plaintiff to sexual harassment, unwanted sexual contact, and discriminatory conduct that was so severe and objectively offensive that it violated her constitutional rights.

116.  The physical and verbal conduct committed by Ms. Liddle was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiff's work or academic performance, or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

117.  Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants owed Plaintiff certain duties to personal security and bodily integrity and Equal Protection of Laws so as not to violate the constitutional rights of students, and Plaintiff in particular and as

alleged throughout this Complaint, and to take proper measures to report, prevent, or otherwise protect students such as Plaintiff in the event that such violations may occur.

118.    Defendants are liable pursuant to 42 U.S.C § 1983, in that their policies, procedures, regulations, and customs, or that their failure to enact policies, procedures, regulations, and customs, caused and were the driving force behind the violation of Plaintiff's constitutional rights as alleged throughout this Complaint.

119.    Defendants were at all times relevant to this cause of action employees and/or administrators of Defendant Western, acting as employees and/or administrators of Defendant Western, and acting within the scope of their employment and under the color of state law.

120.    The environment allowed by Defendants was hostile based on the circumstances, including but not limited to the frequency of Ms. Liddle's misconduct, the nature and severity of the misconduct, the relationship between the parties, the location and context in which the misconduct occurred, and the threatening and humiliating nature of the conduct.

121.    The environment resulting from Defendants' failures to address Ms. Liddle's sexual harassment and misconduct constitute a hostile environment.

122.   Defendants' actions and inactions, as described herein, violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

123.   The acts of physical, sexual, verbal, and emotional abuse permitted by Defendants against Plaintiff under all circumstances relevant to this cause of action amounted to deliberate indifference to the risk that Plaintiff would suffer harm and to Plaintiff's health and safety, which Defendants were specifically aware yet disregarded.

124.   Defendants' deliberate indifference under the circumstances relevant to this cause of action reflect a failure to even care about the health and safety of Plaintiff and such deliberate indifference under such circumstances literally shocks the conscience.

125.   The actions and/or deliberate indifference of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff.   Moreover, Defendants' conduct violated clearly established constitutional rights of which reasonable persons in their positions would have known.   As a result of such intentional conduct, Defendants are not entitled to qualified immunity.

126.    As a direct result of the foregoing, Plaintiff has suffered, and will continue to suffer, both economic and noneconomic damages, including, but not limited to, the following:

    a.  Physical pain and suffering;

    b.  Mental anguish;

    c.  Fright and shock;

    d.  Denial of social pleasure and enjoyments;

    e.  Embarrassment, humiliation, and mortification;

    f.  Reasonable expenses of necessary medical care, treatment, and services;

    g.  Loss of earning capacity;

    h.  Lost wages;

    i.  Loss of educational opportunities;

    j.  Loss of school funding and scholarships; and

    k.  Any and all injuries or damages that are learned though the course of discovery.

127.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this

Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

128.    The actions and/or deliberate indifference of Defendants, as described above, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

**WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP**

Attorneys for Plaintiffs


By: *s/ Charles Mendez*
Michael Nimmo, 36947
Charles Mendez, 47467
WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiffs
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
T: 303.571.5302
F: 303.571.1806
michael@denvertriallawyers.com
charles@denvertriallawyers.com
*Attorneys for Plaintiffs*




Dated: October 22, 2024

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ABIGAIL YALCIN

Case No.

Hon.

     Plaintiff,


v.

WESTERN COLORADO UNIVERSITY,
VICTORIA LENORE FELLOWS, in her
Official and Individual Capacities; MILES CARTER
VAN HEE, in his Official and Individual
Capacities; and GARY PIERSON, in his Official
and Individual Capacities;



     Defendants.

---

Michael Nimmo (36947)
Charles Mendez (47467)
WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiffs
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
T: 303.571.5302
F: 303.571.1806
michael@denvertriallawyers.com
charles@denvertriallawyers.com

---

## PLAINTIFF'S JURY DEMAND

NOW COMES Plaintiff Abigail Yalcin, by and through her attorneys, WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP, and hereby demand a trial by jury in the above-captioned matter.

Respectfully submitted,

**WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP**
Attorneys for Plaintiffs


By: *s/ Charles Mendez*
Michael Nimmo, 36947
Charles Mendez, 47467
WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiffs
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
T: 303.571.5302
F: 303.571.1806
michael@denvertriallawyers.com
charles@denvertriallawyers.com
*Attorneys for Plaintiffs*


Dated: October 22, 2024